**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| ELEKTRA ENTERTAINMENT GROUP INC., a Delaware corporation; WARNER BROS. RECORDS INC., a Delaware corporation; PRIORITY RECORDS LLC, a California limited liability company; VIRGIN RECORDS AMERICA, INC., a California corporation; INTERSCOPE RECORDS, a California general partnership; UMG RECORDINGS, INC., a Delaware corporation; SONY BMG MUSIC ENTERTAINMENT, a Delaware general partnership; and ARISTA RECORDS LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>SCOTT WERRY,<br><br>Defendant. | Civil No. 1:06-cv-00357-T-LDA |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM**

Plaintiffs respectfully submit this memorandum of law in support of their motion to dismiss Defendant's counterclaim pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6). As set forth below, Defendant has not alleged and could not allege any law or facts sufficient to support his counterclaim for abuse of process. Plaintiffs filed an unimpeachable complaint asserting claims for copyright infringement for no other purpose other than to obtain injunctive and monetary relief. Accordingly, this counterclaim should be dismissed.

## STATEMENT OF FACTS

### A. Factual Background

On August 8, 2006, Plaintiffs filed the instant action against Defendant Scott Werry ("Defendant"), seeking redress for the infringement of Plaintiffs' copyrighted sound recordings.

Plaintiffs are recording companies that own or control exclusive rights to copyrights in sound recordings. Collectively, they face a massive problem of digital piracy over the Internet. Every month, copyright infringers unlawfully disseminate billions of perfect digital copies of Plaintiffs' copyrighted sound recordings over peer-to-peer ("P2P") networks. See Levi Grossman, It's All Free, Time, May 5, 2003. Indeed, the Supreme Court recently characterized the magnitude of online piracy as "infringement on a gigantic scale." See Metro-Goldwyn-Mayer Studios, Inc., v. Grokster Ltd., et al., 125 S. Ct. 2764, 2782 (2005).

As a direct result of piracy over the P2P networks, Plaintiffs have sustained, and continue to sustain, devastating financial losses. Indeed, the Department of Justice has stated that online media distribution systems are "one of the greatest emerging threats to intellectual property ownership," that "millions of users access P2P networks," and that "the vast majority" of those users "illegally distribute copyrighted materials through the networks." Report of the Department of Justice's Task Force on Intellectual Property, available at http://www.cybercrime.gov/IPTaskForceReport.pdf at 39 (October 2004). As the Seventh Circuit recently held, "Music downloaded for free from the Internet is a close substitute for purchased music; many people are bound to keep the downloaded files without buying the originals." BMG Music v. Gonzalez, 430 F.3d 888, 890 (7th Cir. 2005). In addition, downloads from P2P networks compete with licensed broadcasts and undermine the income available to authors. Id. at 891. Plaintiffs' losses from online music piracy have resulted in layoffs of thousands of employees in the music industry. Unfortunately, infringing users of P2P systems are often "disdainful of copyright and in any event discount the likelihood of being sued or prosecuted for copyright infringement," rendering this serious problem even more difficult for copyright owners to combat. In re Aimster Copyright Litigation, 334 F.3d 643 (7th Cir. 2003).

P2P users who disseminate (upload) and copy (download) copyrighted material violate the Copyright Act. See Grokster, 125 S. Ct. at 2770-72 (noting that users of P2P networks share copyrighted music and video files on an enormous scale and that the providers of those networks "concede infringement" by the individual users); Aimster, 334 F.3d at 643. A copy downloaded, played, and retained on one's hard drive for future use is a direct substitute for a purchased copy - and without the benefit of the license fee paid to the broadcaster. See Gonzalez, 430 F.3d at 891.

**B. Plaintiffs' Claims**

On September 2, 2005, Plaintiffs' third-party investigators, MediaSentry, Inc. ("MediaSentry"), located an individual using the LimeWire file-sharing program to engage in copyright infringement on a massive scale. MediaSentry detected the infringement by logging onto the P2P network, in the same fashion as any Internet user could do, and by viewing the files that this individual was distributing to other users. This individual had ***385 music files*** on his computer and was distributing them freely to the millions of people who use similar P2P networks. On information and belief, this individual downloaded all or many of these 385 music files without the permission of the copyright owners. In short, as an active user of a P2P network, this individual was downloading copyrighted sound recordings from other users of the P2P network, and he was distributing the copyrighted sound recordings stored on his computer to other P2P users.

MediaSentry determined that this individual, whose true identity was then unknown, used Internet Protocol ("IP") address 24.250.26.110 to connect to the Internet. Based upon that IP address, Plaintiffs were able to determine, through publicly available databases, that this infringer's Internet service provider ("ISP") was Cox Communications, Inc. Plaintiffs then filed a "John Doe" lawsuit in federal court to determine the true identity of this infringer. After

obtaining leave of the court, Plaintiffs served a subpoena on Cox Communications to obtain identifying information regarding the registered owner of IP address 24.250.26.110 at the time and date that MediaSentry discovered the infringement. In response to this subpoena, Cox Communications identified Defendant Scott Werry as the individual in question.

On August 8, 2006, Plaintiffs filed their Complaint against Defendant seeking redress for the infringement of their copyrighted sound recordings pursuant to the Copyright Act, 17 U.S.C. § 101 et seq. On September 19, 2006, Defendant filed a counterclaim for abuse of process.

### C. Defendant's Counterclaim

On September 19, 2006, Defendant answered and asserted a counterclaim for abuse of process. Defendant's entire allegation portion of his claim for abuse of process consists of two sentences. The first sentence states that Plaintiffs' claim is legally justified in form. (Counterclaim, ¶ 2) The second alleges that Plaintiffs sued him for copyright infringement "through the ulterior motive to extort economic profits by legal advantage in attempting to collect monies from the defendant which is not owed by said defendant." (Counterclaim ¶ 3.) At no point in Defendant's answer or counterclaim does defendant allege or allude to any facts which would support his claim. Defendant then seeks damages of over one million dollars.

## ARGUMENT

### A. Defendant's Counterclaim Should Be Dismissed Because It Fails To Give Plaintiffs Adequate Notice Under Fed. R. Civ. P. 8(a)

Fed. R. Civ. P. 8(a)(2) states that a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint "satisfies this standard if it "gives the defendant fair notice of what the plaintiff's claim is and ***the grounds upon which it rests.***" Centrino Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5-6

(1st Cir. 2005), (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)) (emphasis added). Thus, "Plaintiffs are obliged to set forth in their complaint factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory." Miranda Otero v. P.R. Indus. Comm'n, 441 F.3d 18, 21 (1st Cir. 2006) (internal quotations and citations omitted); see also Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004) ("[I]n any other action subject to notice pleadings standards, the complaint should at least set forth minimal facts as to who did what to whom, when, where and why..."). A court, however, is not bound to "credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Centro Medico del Turabo, 406 F.3d at 5-6, (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

In this case, Defendant's purported counterclaim asserts no facts whatsoever, but rather offers bald assertions and unsupportable allegations. Specifically, Defendant makes no factual allegations, details no conversations, indicates no documents and provides no information whatsoever that would directly or indirectly provide the factual basis for Defendant's claim. Indeed, Defendant offers nothing to indicate who did what to whom, when, where or why, and Plaintiffs have no idea what they are being asked to defend against. See Hernandez, 367 F.3d at 68. For the reasons set forth above, such pleading fails to satisfy the requirements of Fed. R. Civ. P. 8(a), and Defendant's counterclaim should be dismissed.

**B. Defendant's Counterclaim Should Be Dismissed For Failure to State a Claim Upon Which Relief Could Be Granted Because Defendant Cannot Allege Any Set Of Facts That Could Support a Claim For Abuse of Process**

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be granted where it appears beyond doubt "that the [claimant] can prove no set of facts in support of [his] claim which would entitle [him] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Epstein v. C.r. Bard, Inc., 2006 U.S. App. LEXIS 21697 (1st Cir. 2006). Although the district court must accept all well-

pleaded factual allegations as true and draw reasonable inferences in favor of the plaintiff, "[t]he court is free...to disregard bald assertions, unsupportable conclusions, and opprobrious epithets." Brown v. Credit Suisse First Boston LLC, 431 F.3d 36, 45 (1st Cir. 2005).

To prove an abuse of process claim, a plaintiff "must demonstrate that (1) the defendant instituted proceedings or process against the plaintiff and (2) the defendant used these proceedings for an ulterior or wrongful purpose that the proceedings were not designed to accomplish." Gallipeau v. Baer, 2004 U.S. Dist. LEXIS 15848, 8-9 (D.R.I. 2004) (quoting Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002)); see also Labonte v. Nat'l Grange Mut. Ins. Co., 810 A.2d 250, 254 (R.I. 2002) (quoting Nagy v. McBurney, 392 A.2d 365, 370 (R.I. 1978)). ("An 'action of abuse of process provides a remedy for a claim arising when a legal procedure, although set in motion in proper form, has been perverted to accomplish an ulterior or wrongful purpose for which it was not designed.'")

The improper purpose "usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion." Butera v. Boucher, 798 A.2d. at 353 (citing W. Page Keeton, PROSSER AND KEETON ON THE LAW OF TORTS § 121 at 898 (5th ed. 1984)); see also Wright v. Zielinski, 824 A.2d 494, 499 (R.I. 2003) (citing Heal v. Heal, 762 A.2d 463, 465 (R.I. 2000)) (a husband who instituted an action for custody of his children, in whom he had shown little interest, solely in order to "make good on his threat to make [his wife's] life a living hell." (alteration in original); Hillside Assocs. v. Stravato, 642 A.2d 664, 667 (R.I. 1994) (citing PROSSER AND KEETON ON THE LAW OF TORTS § 121 at 897-98) (a plaintiff who prosecutes an innocent defendant for a crime with reasonable grounds, but with the ulterior motive to extort payment of a debt).

Here, as noted above, Defendant has alleged nothing more than bald assertions, unsupportable conclusions and opprobrious epithets. See Brown, 431 F.3d at 45. There are no well-pleaded allegations sufficient to support a claim for abuse of process. To the contrary, Defendant's counterclaim appears to be nothing more than a bald allegation that Defendant believes that he is not liable for the infringement alleged. As a matter of law, such an allegation does not state the improper or ulterior purpose required to state a claim for abuse of process. Indeed, to hold otherwise would suggest that every general denial of liability by every defendant would give rise to a counterclaim for abuse of process, surely an absurd result.

Plaintiffs have brought their claims for copyright infringement for the sole and legitimate purpose of protecting their copyrights in their sound recordings. Defendant neither has alleged nor could allege that Plaintiffs do not have a legal right to protect their copyrights. As such, Plaintiffs have used "the process" for the very purpose for which it was intended. Accordingly, as a matter of law, there can be no claim for abuse of process. See PROSSER AND KEETON ON THE LAW OF TORTS § 121 at 897-98 (holding that, to succeed on a claim for abuse of process, there must be "[s]ome definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process...and there is no liability where the defendant has done nothing more than carry out the process to its proper conclusion, even though with bad intentions."); see also Grabinski v. Nat'l Union Fire Ins. Co., 2005 U.S. Dist. LEXIS 21946, at *18-19 (D. Ariz. 2005) (dismissing abuse of process action for failure to state claim where plaintiffs did not assert any factual basis for their allegation that defendant willfully used the judicial process for an ulterior purpose, and that mere speculation concerning an ulterior purpose is insufficient.)

Arista Records, L.L.C. v. Tschirhart, No. 5:05-cv-00372-OLG (W.D. Tex. May 24, 2006) and Interscope Records v. Duty, No. 05-CV-3744-PHX-FJM, 2006 CL 988086 (D. Ariz. Apr. 14, 2006) are directly on point. In both of these cases, plaintiff record companies sued defendants for copyright infringement for illegally downloading and uploading sound recording on P2P networks. In both cases, the defendants asserted counterclaims for abuse of process on the basis of conclusory assertions of improper conduct. And, in both cases, the courts dismissed such counterclaims under Rule 12(b)(6), finding that defendants could not state viable claims. Tschirhard, No. 5:05-cv-00372-OLG at 7; Duty, No. 05-CV-3744-PXH-FJM at 7. For the same reasons as were set forth in Tschirhart and Duty, Defendant's abuse of process counterclaim here should be dismissed with prejudice.

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that this Court dismiss Defendant's Counterclaims with prejudice. Plaintiffs further request such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: October 20, 2006

By: /s/ James E. O'Neil

James E. O'Neil (RI Bar # 2097)
The Meadows, Suite A103
1130 Ten Rod Road
North Kingstown, RI 02852
Phone (401) 667-7111
Fax (401) 667-7112

Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this __20th__ day of October, 2006, a copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIM** were served upon the Defendant via United States Mail, first-class postage prepaid, at the following address:

Scott Werry
398 Field Hill Rd.
Clayville, RI 02815-1102
*Defendant*

/s/ James E. O'Neil
James E. O'Neil (RI Bar # 2097)
The Meadows, Suite A103
1130 Ten Rod Road
North Kingstown, RI 02852